IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Case No.   05-cv-00993-LTB-CBS

SOOTHSOFT INNOVATIONS WORLDWIDE, INC. f/k/a MAVERICK MARKETING
VENTURES, INC.; ERIC D. STANLEY; and KIRK A. STANLEY,

    Plaintiffs,

v.

K&H MANUFACTURING, INC.; PETSMART, INC.; DRS. FOSTER & SMITH, INC.; PET STREET MALL d/b/a THEPAMPEREDPETMART.COM; EBAY, INC.; FAITHFUL PET PRODUCTS; MANITOU MARKETING, INC. d/b/a TOTALPETCOMFORT.COM; JEFFERS PET d/b/a JEFFERSPET.COM; DRESSLER'S DOG SUPPLIES d/b/a DRESSLERSDOG.COM; J-B WHOLESALE PET SUPPLIES, INC. d/b/a JBPET.COM; LAMBRIAR ANIMAL HEALTH CARE, INC. d/b/a LAMBRIARVET.COM; PICKLED HERRING, INC. d/b/a PETRONIC.COM; A S WEBSALES CORPORATION d/b/a BUYPETBEDS.COM; and CARE-A-LOT PET SUPPLY d/b/a CAREALOTPETS.COM,

    Defendants.

_____

ORDER
_____

Eric and Kirk Stanley (the "Stanleys"), brothers who founded and operate SoothSoft Innovations Worldwide, Inc. ("SoothSoft"), together with SoothSoft initiated this lawsuit and moved for a preliminary injunction prohibiting K&H Manufacturing, Inc. ("K&H") from manufacturing and selling an allegedly infringing product. On July 28, 2005, after an evidentiary hearing, I granted that motion. K&H now moves pursuant to Fed. R. Civ. P. 59(e) for reopening of the hearing to consider evidence that it failed previously to proffer. The motion is adequately briefed and oral argument would not materially aid its resolution. For the reasons stated below, I DENY the motion.

In my July 28, 2005 order I set out in detail my findings of fact and conclusions of law. I recite here only those facts pertinent to the new question that K&H has raised. The Stanleys own United States Patent No. 5,991,948 ("'948 Patent"), under which SoothSoft by license from the Stanleys manufactures and sells a product known as the "Canine Cooler" pet bed. The invention embodied by the Canine Cooler is described in claim one of the '948 Patent, which reads,

> A thermal regulating cushioning device comprising:
>
> a flexible, deformable outer membrane being adapted to sealably receive a liquid material therein;
>
> a foam core being encased, within and in intimate contact with, but not bonded to, said flexible, deformable outer membrane wherein said foam core has a dimension substantially coincident with said outer membrane;
>
> a liquid material being sealably contained within said flexible, deformable outer membrane and saturating said foam core, said liquid material being at least partially circulatable through said foam core wherein the cooperation of said saturated foam core and said sealable flexible membrane provide a substantially uniform, thermal regulating medium and structural support such that said cushioning device is readily, uniformly deformable when a load is applied thereto.

Prior to entry of the injunction, K&H manufactured and sold a product designed to compete with the Canine Cooler, called the "Cool Bed." At the first hearing, K&H asserted non-infringement and anticipation defenses, which I rejected. K&H argued, among other things, that United States Patent No. 4,259,961 ("'961 Patent") anticipated the '948 Patent, rendering the '948 Patent invalid. After considering all the evidence, I found and concluded that K&H had failed to overcome the presumption that the '948 Patent is valid. *See Lisle Corp. v. A.J. Mfg. Co.*, 398 F.3d 1306, 1313 (Fed. Cir. 2005).

K&H now claims to have discovered another patent, United States Patent No. 4,332,043 ("'043 Patent"), which it believes anticipated the '948 Patent. The '043 Patent abstract discloses

a "waterbed mattress with one or more open-celled foam members used for dampening wave action in the water... . The foam members are supported by the buoyant force of the water and require no attachment to the surface of the waterbed mattress bladder." The primary object of the invention is "to provide a waterbed mattress with a means for dampening wave action in the water." In the preferred embodiment of the invention,

> [t]he dampening device is extremely flexible and water permeable. In a water permeated condition, the dampening device has a specific gravity slightly less than one. The dampening device, therefore floats with the horizontal plate barely breaking the surface of the water. The buoyancy of the dampening device obviates the need for mechanical attachment to the interior surface of the bladder.

'043 Patent, column 3, lines 35-42.

The primary examiner of the '043 Patent, Alexander Grosz, also examined the '948 Patent. I presume that Mr. Grosz would have been far more familiar than I with the relationship, if any, between the '043 and '948 Patents. That he approved both patents is significant. Regardless, for two additional reasons, K&H has not made a showing sufficient to convince me to reopen evidence.

First, K&H cannot claim that evidence of the '043 Patent was unavailable at the time of the hearing; that K&H made a diligent yet unsuccessful effort to discover the evidence is left to speculation. *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992). Whether K&H at the time of the hearing was unaware of the '043 Patent or did not appreciate its significance, I am not required to reconsider my previous order merely because K&H would like another opportunity to invalidate the Stanleys' patent. *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994). Absent some evidence, which K&H has not provided, that K&H's counsel was frustrated in a diligent attempt to obtain this evidence prior to the hearing, I am not required to

revisit the question of validity of the '948 Patent.

Second, reopening the evidence would not in any event assist K&H because nothing on the face of the '043 Patent appears to detract from the presumption that the '948 Patent is valid. K&H directs my attention to two similarities between the disclosures of the '043 and '948 Patents: a piece of foam is 1) contained within and 2) not attached, or bonded, to the outer membrane of the device. Also, K&H points out that the two devices both find application as sleeping surfaces.

The differences between the devices, however, are so much greater than the similarities that the '043 Patent on its face cannot be said to have anticipated the '948 Patent. The '043 Patent discloses a waterbed. As Lee Meyer, the Stanleys' patent attorney, explained during the hearing, the '948 Patent discloses neither a waterbed nor an air mattress; the foam core, not air or water pressure, provides the structural support to bodies placed on the device and deforms uniformly under loads. K&H did not at the hearing provide any evidence that might call that account into question. The distinction is readily apparent from the respective patents themselves; while the '043 Patent presupposes a device in which water pressure supports bodies laid upon the device, the '948 Patent does not. In addition, the foam baffle included in the '043 Patent device, like bodies placed on the device, floats on the water contained within the device and serves a function that is readily distinguished from the foam core of the Canine Cooler.

That claim one of the '948 Patent employs the term "comprising" does not, as K&H argues, alter the standard by which anticipation is judged. K&H must demonstrate that all of the elements and limitations of claim one of the '948 Patent are shown, arranged as in the claim, in the '043 Patent. *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001). *Stiftung v. Renishaw PLC*,

4

20 U.S.P.Q.2d 1094 (Fed. Cir. 1991) is not contrary.  In that case, the court characterized a claim using the term "comprising" as an open claim, which reads on subsequent devices that use additional elements; an accused device cannot avoid infringing an open claim merely by adding elements if each element cited in the claim is found in the accused device.  *Id* at 1098.  Because the elements and limitations of the '043 Patent and '948 Patent are distinct, I need not consider the effect of additional elements.

Accordingly, it is ORDERED that the motion is DENIED.


Dated: September   19th   , 2005, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
Lewis T. Babcock, Chief Judge